Filed 2/19/25 In re M.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | D084922 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.M.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J520901A-B) |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge. Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

K.M. (Mother)[1] appeals from the juvenile court's order terminating her parental rights to M.M., and J.M. (together, the children).  (Welf. & Inst. Code, § 366.26.)[2]  Mother's sole contention on appeal is that reversal is necessary to comply with the requirements of the Indian Child Welfare Act (ICWA). We reject Mother's sole contention and affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2021, the San Diego County Health and Human Services Agency (the Agency) filed a petition alleging that M.M. met the requirements of section 300, subdivision (b).  The Agency filed the petition after Mother and M.M. tested positive for methamphetamine, amphetamine, and a marijuana metabolite following M.M.'s birth.  Prior to M.M.'s birth, the Agency received a referral—the seventh concerning Mother's children—related to Mother's drug use or abuse, but attempts to contact Mother were unsuccessful.  Both Mother and Father had extensive criminal records related to illicit substances.  Consistent with that history, Mother has a history of abusing methamphetamines and admitted to marijuana usage during her pregnancy.  She offered that she may have tested positive for methamphetamine as a result of consuming over the counter cold medicine or the medication she received during her c-section.  Hospital staff refuted the explanation that the medication they provided would cause her to test positive for methamphetamine.

---

[1]  T.M. (Father) is not a party to this appeal.  C.R. is also listed as an alleged father for J.M.; he is similarly not a party to this appeal.

[2]  Further undesignated statutory references are to the Welfare and Institutions Code.

Initially, the Agency did not have evidence sufficient to demonstrate immediate risk to J.M. and the family created a safety plan to protect him while he remained in the parents' care. However, within a week of filing the petition regarding M.M., Father also tested positive for methamphetamines. Accordingly, the Agency filed a protective custody warrant and a second petition alleging that J.M. also met the requirements of section 300, subdivision (b).

The court ordered the children detained in separate detention hearings. Following a contested combined jurisdiction and disposition hearing, the court sustained the petitions, found jurisdiction and declared the children dependents. Mother did not visit with the children consistently and frequently lost contact with them and the Agency. Mother did not engage in services and made no progress toward alleviating or mitigating the causes necessitating placement. Accordingly, the court terminated reunification services on September 21, 2022. Mother did not see the children for approximately two years; in March and April 2024, she participated in a few virtual visits while she was incarcerated. After continuing the section 366.26 hearing for approximately 20 months, the court terminated parental rights and ordered the permanent plan of adoption.

In her first contact with the Agency following M.M.'s positive drug test, Mother denied having any Native American heritage. Father similarly denied any relevant heritage and the court found that ICWA did not apply. Mother again confirmed to a social worker that she did not have any known Native American heritage in January 2023. During that conversation, Mother told the social worker that she would provide contact information for biological relatives. Later, Mother provided the Agency with contact

information for a maternal great aunt, De., and maternal aunt, Al.[3]  Both De. and Al. denied Native American ancestry, as did a maternal uncle.

DISCUSSION

Congress enacted ICWA to address concerns that Native American children were being separated from their tribes through adoption or foster care and placed with non-Native American families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  California subsequently enacted its own statutes specifying the procedures the Agency and juvenile courts are required to follow before making placement decisions in determining whether a child is a Native American child.  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)  Under these statutes, the juvenile court and the Agency have an "Affirmative and continuing duty to inquire" during dependency proceedings whether a child "is or may be [a Native American] child."  (§ 224.2, subd. (a).)

"This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)  In the first phase, the Agency's initial duty requires it to, at a minimum, inquire from the party reporting child abuse or neglect whether they have information that suggests the child may be a Native American child.  (§ 224.2, subd. (a).)  In the second phase, "if that initial inquiry creates a 'reason to believe' the child is [a Native American] child, then the Agency 'shall make further inquiry regarding the possible [Native American] status of the child and shall make that inquiry as soon as practicable.' "  (*D.S., supra*, 46 Cal.App.5th at p. 1052, italics omitted.)  In the third stage, if further inquiry results in a reason to

---

[3]     Mother also provided contact information for a distant relative, A.W., but his relationship to the children is unknown and the Agency was unable to contact him.

*know* a child is a Native American Child, the notice requirements of section 224.3 apply. (*Ibid.*)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S., supra*, 46 Cal.App.5th at p. 1051.) Where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*) The failure to engage in a sufficient inquiry requires conditional reversal. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125.)

The Agency's duty of inquiry extends to "asking the child, parents, legal guardian, [Native American] custodian, extended family members, others who have an interest in the child and [any] party reporting child abuse or neglect . . . . " (§ 224.2, subd. (b).) Thus, the Agency is not obligated to conduct an ICWA inquiry of all family members—only those who qualify as " 'extended family member[s]' " as defined under ICWA. (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).) Extended family members are "defined by the law or custom of the [Native American] child's tribe or, in the absence of such law or custom, shall be a person who has reached 18 years of age and who is the [Native American] child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c).) Additionally, the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*D.S., supra*, 46 Cal.App.5th at p. 1053.)

Mother contends that the Agency did not sufficiently inquire of the maternal great-grandmother or a maternal cousin, Do. First, the record does not indicate Mother ever provided the Agency with contact information, or even a name, for the maternal great-grandmother. As best we can discern, Mother first brought "cousins" Do. and A.W. to the attention of the court and

5

the Agency in March 2024. Mother provided a phone number for A.W., although the Agency was unable to contact him because it was out of service. With respect to Do., the purported maternal cousin, Mother argues that "the *Agency* is required to ask *mother* for the contact information, and simply made no effort." This argument fails to account for the six court orders directing Mother to provide the Agency with information about the children's relatives. It similarly fails to account for her assertion that she would provide Do.'s contact information to the Agency.

We observe that Mother has never asserted Do. is a first or second cousin. Sections 224.1 and 224.2 together impose a duty upon the Agency to inquire of first and second cousins. Instead, Mother implicitly concedes Do. is *not* a qualifying relative and relies on section 224.2, subdivision (b), which requires the Agency to inquire of "others who have an interest in the child." Thus, we look to whether the maternal great-grandmother and Do. might qualify as "others" with an interest in the children.

"Grandparents are included in the statutory definition of ' "extended family member," ' but great-grandparents are not." (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 564, fn. 2.) Mother seeks to align her family members with the interested parties in *Dominick D.* but her case is easily distinguished. The great-grandfather considered in *Dominick D.* was the child's primary caregiver for two months, not a distant relative for the relevant agency to track down. (*Ibid.*) In fact, the social worker responsible for managing Dominick's case interviewed the great-grandfather and failed to make ICWA inquiries. (*Id.* at p. 565.) Thus, in order to fall into the category of "others who have an interest in the child," it is not enough to simply be related—a person must be involved in the child's life. The sole reference to the maternal great-grandmother in the record before us indicates she offered

Mother support following a domestic violence incident approximately three months after the children were removed from her custody.  Similarly, we find nothing in the record to indicate Do. has ever been involved in the children's lives, only that she may be related to Mother in some way.  We must therefore conclude that neither of these attenuated relations qualify as "others who have an interest in the child[ren]."

On this record, we conclude the inquiry below met the requirements of ICWA.

DISPOSITION

The order is affirmed.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.

7